IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------X
ANDREA BROOKER and JERMAL D.      :
BROOKER,                           :
                                   :
             Plaintiffs,   :
                                   :   Civil Action No. 02-CV-2651 (CSG)
v.                                 :
                                   :
TEXTRON, INC. and TEXTRON, INC.    :
a/k/a d/b/a TEXTRON LYCOMING and   :
TEXTRON LYCOMING and AVCO          :
CORPORATION,                       :
                                   :
             Defendants.  :
---------------------------------------------------------X


**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Defendants Textron Inc., Textron Lycoming and Avco Corporation's opening memorandum ("Mem. Sup.") showed why, despite the number of claims Plaintiffs purport to bring, discovery has revealed that none of these claims can survive when tested against the undisputed record and the controlling legal principles.[1] Consistent with their approach throughout this lawsuit, Plaintiffs' Memorandum of Law Contra Defendants' Motion for Summary Judgment ("opposition" or "Opp.") offers no evidence in support of Plaintiffs' claims. Instead, and in a transparent attempt to mask their evidentiary inadequacies, Plaintiffs wholly ignore (and in many instances, misstate) the undisputed record while offering nothing more than a smorgasboard of conclusory assertions about how the issues raised in Defendants' opening memorandum "should be decided by the trier-of-fact." Opp., at 8. Such assertions are insufficient, as a matter of law, to survive a motion for summary judgment. See Marion v. City of Philadelphia, No. CIV. A. 00-3553, 2002 WL 31761426, at *2 (E.D. Pa. Dec. 9, 2002) (Green, J.) (attached hereto as Ex. A) (granting summary judgment in employment discrimination case because "Plaintiff has failed to provide evidence sufficient to create a disputed issue regarding any material fact, and instead relies on her own perceptions, beliefs, opinions, allegations, denials and her intent to demonstrate at trial what she is unable to demonstrate on summary judgment"). Accordingly, Defendants are entitled to summary judgment in their favor, and this action should be dismissed in its entirety with prejudice.

---

[1] Defendant Textron Inc. filed a separate Motion for Summary Judgment and supporting memorandum seeking to dismiss Plaintiffs' claims because Textron Inc. is not a proper party to this lawsuit. Plaintiffs are not contesting Textron Inc.'s Motion. See Plaintiffs' Response to Defendant, Textron Inc.'s Motion for Summary Judgment. Accordingly, all of Plaintiffs' claims against Textron Inc. should be dismissed in their entirety.

I. **PLAINTIFF ANDREA BROOKER HAS NOT, AS A MATTER OF LAW, ESTABLISHED THAT DEFENDANTS DISCRIMINATED AGAINST HER**

    A. **Defendants are Entitled to Summary Judgment on Ms. Brooker's Failure to Promote Claims**

In their opening memorandum, Defendants showed that, under the undisputed record evidence, Ms. Brooker cannot establish (i) a *prima facie* case of discrimination on her failure to promote claims and (ii) that Defendant Textron Lycoming's stated reasons for selecting other individuals for the positions that Ms. Brooker applied for were a pretext for race discrimination. Mem. Sup., at 27-40. Ms. Brooker's opposition does not raise a genuine issue of material fact with respect to these issues. Accordingly, Defendants are entitled to summary judgment on Ms. Brooker's failure to promote claims.

        1. **FAA/Supervisor and Planner/New Product Support**

First, Ms. Brooker effectively concedes that her failure to promote claims relating to the FAA/Supervisor and Planner/New Product Support positions are meritless, as her opposition makes no reference to these claims. See Marion, 2002 WL 31761426, at *3 (granting summary judgment on race discrimination and retaliation claim because Plaintiff offered no evidence to support claims). Accordingly, her claim as to these two positions should be dismissed.

        2. **FAA Administrative Specialist**

Likewise, Ms. Brooker's failure to promote claim relating to the FAA Administrative Specialist position should be dismissed because Ms. Brooker offers no evidence, and thus cannot, as a matter of law, establish either a *prima facie* case of discrimination or that Defendant Textron Lycoming's articulated reasons for selecting someone other than Ms. Brooker were a pretext.

First, Ms. Brooker cannot establish a *prima facie* case of discrimination because the undisputed facts show that she was not qualified for the FAA Administrative Specialist position.

Mem. Sup., at 9-10, 32. Ms. Brooker does not even attempt to challenge this fact in her opposition; indeed, she does not even try to explain how she was qualified for the position, except to disingenuously and incorrectly assert that the FAA Administrative Specialist position "appears to be a secretarial job." Opp., at 6. In fact, and as the undisputed facts show, the FAA Administrative Specialist is an "exempt" position that is not classified as a "secretarial/clerical" position. See 11/17/03 Declaration of Dan P. Smith ("Smith Decl."), ¶ 21; 11/14/03 Declaration of Steven Ellis ("Ellis Decl."), Ex. 5.[2]

Second, Ms. Brooker cannot establish pretext because she does not even challenge Defendant Textron Lycoming's stated reasons for selecting Linda McPherson, and not Ms. Brooker, for the FAA Administrative Specialist position. As the undisputed facts show, Textron Lycoming selected Ms. McPherson because it believed she was more qualified than Ms. Brooker. Mem. Sup., at 9-10, 32-35. Ms. Brooker makes no effort to challenge this explanation. Instead, she simply alleges that "[i]t is noteworthy that the person interviewing for the job was the supervisor of McPherson (according to her resume, 000785) who eventually wound up with the job." Opp., at 6. Not only is this allegation not "noteworthy" -- particularly since Steven Ellis was responsible for filling the position and Ms. McPherson's resume lists Fred Hill, and not Mr. Ellis, as her supervisor (Mem. Sup., at 9, Smith Decl., Ex. 24 (#000785)) -- it is wholly insufficient to establish pretext on a failure to promote claim.

### 3. Buyer/Planner

Ms. Brooker's failure to promote claim relating to the Buyer/Planner positions should be dismissed because, again, Ms. Brooker offers no evidence in her opposition and thus cannot, as a matter of law, establish either a *prima facie* case of discrimination or pretext.

---

[2] The Smith Decl. is attached as Exhibit A to the Appendix to the Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs' Appx."). The Ellis Decl. is attached as Exhibit F to Defs' Appx.

First, Ms. Brooker cannot establish a *prima facie* case of discrimination because the undisputed facts show that she was not qualified for the Buyer/Planner positions. Mem. Sup., at 10-12, 36. Ms. Brooker does not explain how she was qualified for the positions, other than to baldly assert that she "qualified for this position under any reading of the Open Position Announcements [for the Buyer/Planner positions] and Andrea Brooker's background." Opp., at 7.[3]

Second, Ms. Brooker cannot establish pretext because she does not even try to compare her qualifications to those of Ms. Clark and Mr. Mantle. Indeed, the only "evidence" Ms. Brooker submits in support of her claim is the conclusory assertion that she "was just as qualified as either Candace Clark or Michael A. Mantle" for the Buyer/Planner positions. Opp., at 7. This is insufficient to establish pretext. Moreover, although Ms. Brooker simply lists the educational experience of Ms. Clark and Mr. Mantle, she neglects to state that each of them possessed educational experience that was equal or superior to Ms. Brooker (who possessed an associate's degree). Mem. Sup., at 5; Smith Decl., Ex. 25 (#000385, 000765); Opp., at 7 (noting that Ms. Clark had "two years of college with an associate's degree" and that Mr. Mantle went to a two-year associate college and was half-way towards earning a bachelor's degree.). More importantly, Ms. Brooker wholly ignores and makes no attempt to challenge the undisputed fact that both Ms. Clark and Mr. Mantle possessed substantially more qualifications than Ms. Brooker for the Buyer/Planner positions. Mem. Sup., at 10-12, 36-39.

Ms. Brooker attempts to create pretext where there is none by noting that Textron Lycoming had a policy of ensuring that "internal candidates receive full consideration for position openings." Opp., at 8. Defendants do not dispute this fact, which is why Textron

---

[3] Ms. Brooker asserts that the Buyer/Planner positions are "essentially administrative positions." Opp., at 8. In fact, the Buyer/Planner positions are "exempt" positions that are not classified as "secretarial/clerical" positions. Smith Decl., ¶ 21; Ex. 25 (#000721).

Lycoming posted an "Open Position Announcement" at its facility when a job vacancy existed (Smith Decl.,¶ 35) and which is why Ms. Brooker, in addition to other internal applicants, were interviewed for the Buyer/Planner positions. Mem. Sup., at 10-12; 11/14/03 Declaration of James Pike ("Pike Decl.") (attached as Ex. G to Defs' Appx.), ¶ 5.

Finally, and in a blatant misstatement of the record, Ms. Brooker's affidavit states, without any citation to the record or any corporate policies, that during her employment, Textron Lycoming's policy was "to promote employees from within. . . ."  Affidavit of Plaintiff, Andrea Brooker ("Brooker Aff.") (attached to Plaintiffs' opposition). This is just plain wrong. As the undisputed record shows, Textron Lycoming's written hiring procedures clearly and unambiguously stated that "[i]t will continue to be the practice of the Company to identify candidates for open positions from internal *as well as external sources*." Smith Decl., Ex. 2 (#000001) (emphasis added); Smith Decl., ¶ 34. As the undisputed facts also show, Textron Lycoming determined that Mr. Mantle and Ms. Clark were the most qualified candidates for the Buyer/Planner positions. Mem. Sup., at 10-12, 36-39. For this reason, neither Ms. Brooker, nor any other internal applicant, were offered the Buyer/Planner positions. Pike Decl., ¶¶ 5, 16.[4]

In sum, the assertions made in Ms. Brooker's opposition reflect nothing more than her subjective disagreement with Textron Lycoming's decision to select other candidates, and not her, for the Buyer/Planner positions. This is insufficient to establish pretext. See Reap v. Continental Cas. Co., No. Civ. A. 99-1239 (MLC), 2002 WL 1498679, at *11 (D.N.J. June 28,

---

[4] In an apparent attempt to establish pretext, Ms. Brooker's opposition notes that Textron Lycoming's hiring procedures state that one of the factors used to evaluate candidates is "'length of service' *(if all other factors are equal)*." (Opp., at 8) (emphasis added). To the extent Ms. Brooker is alleging that she was more qualified than Mr. Mantle and Ms. Clark due to her length of service at Textron Lycoming, this is insufficient to establish pretext, as the undisputed facts show that Defendants had a substantial basis for believing that Mr. Mantle and Ms. Clark were *more* qualified than Ms. Brooker for the Buyer/Planner positions. Mem. Sup., at 10-12, 36-39.

2002) ("At the pretext stage of the analysis, an employee's own conclusory statements . . . are insufficient to defeat summary judgment.").

For all of the foregoing reasons, in addition to the reasons contained in Defendants' opening memorandum (Mem. Sup., at 27-40), Ms. Brooker's failure to promote claims should be dismissed in their entirety.

    **B.    Defendants are Entitled to Summary Judgment on Ms. Brooker's Wage Discrimination Claims**

Ms. Brooker's attempt to muster a claim of race-based pay discrimination utterly fails for myriad reasons. In fact, the *only* evidence that Ms. Brooker offers in support of her claim is apples-to-oranges pay comparisons between Ms. Brooker and some of the white office/clerical employees. Ms. Brooker's showing falls short of proving a *prima facie* case of pay discrimination, much less intentional discrimination. Indeed, Ms. Brooker does not offer a shred of evidence that any of the legitimate reasons articulated by Textron Lycoming for its pay decisions are pretextual. Accordingly, Ms. Brooker does not meet her burden of proving wage discrimination as a matter of law, and Defendants are entitled to summary judgment on this claim.

First, Ms. Brooker does not make out a *prima facie* case of pay discrimination because she does not offer *any* evidence that she performed substantially similar work to any of the alleged comparators -- eight Caucasian office and clerical workers who each worked in a different department than Ms. Brooker and under different managers.[5] This is a required element. See Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000). In fact, Ms.

---

[5] The eight alleged comparators according to Ms. Brooker are: Angela Gardner, Beverly Gunther, Shelly Hensler, Cynthia Lupole, Michelle Marino, Jodi Michaels, Candace Stine, and Yvonne Winters. Since Ms. Brooker's opposition does not discuss the pay treatment of Sharon Dawes, Christine Heinbach, Marilyn Morrison, Kathryn Murray or Debbie Trimble (Opp., at 2-5), Defendants assume that Ms. Brooker concedes that these employees are not comparators. In any event, Ms. Brooker's failure to discuss these employees or offer any evidence concerning their pay amounts to a waiver of any pay claim with respect to them.

Brooker's opposition contains no discussion whatsoever of her job duties or anyone else's. This gap in the record -- standing alone -- is fatal to Ms. Brooker's pay claim. Mem. Sup., at 41-42; see Marion, 2002 WL 31761426, at *2-3.

Second, while ignoring the fact that Karen Turner, who is African-American, earned more money than many white office and clerical workers, Ms. Brooker disingenuously attempts in her opposition to create pay disparities between herself and some of the other office/clerical workers where there is none.

For example, Ms. Brooker claims that her starting pay was less than Angela Gardner's. Opp., at 3. Putting aside the fact that Ms. Brooker provides no record citations for this claim, she fails to mention two facts that make this comparison inappropriate: (i) Ms. Brooker was hired as a part-time, temporary employee in 1997 while Ms. Gardner was hired as a full-time employee; and (ii) Ms. Gardner was hired nearly two years after Ms. Brooker. In fact, Ms. Brooker was paid more than Ms. Gardner in 1999 and 2000, the two years Ms. Brooker and Ms. Gardner were both full-time employees before Ms. Gardner was laid off. Mem. Sup., at 5-7, 21.

Likewise, Ms. Brooker compares apples to oranges when she asserts that her starting pay was less than Michelle Marino's. Opp., at 4. Again, Ms. Brooker started as a temporary, part-time, level-5 employee in 1997 while Ms. Marino started in 1999 as a full-time, level-7 employee, earning $843.00 bi-weekly. Incidentally, Ms. Brooker's pay was also $843.00 bi-weekly in 1999. Mem. Sup., at 5-7, 22.

Contrary to Ms. Brooker's contention that there was a discrepancy between her and Shelly Hensler's pay (Opp., at 4), after Ms. Brooker became a full-time employee in 1998, she was paid more than (in 1998) or nearly the identical salary (in 1999 and 2000) as Ms. Hensler. Mem. Sup., at 5-7, 21. Similarly, Ms. Brooker's portrayal of a pay disparity between her and

Yvonne Winters is disingenuous. Opp., at 5. In fact, when these employees were both office/clerical workers in 2000 and 2001, Ms. Brooker earned more than Ms. Winters in 2000 and slightly less than her in 2001 -- which can be explained by a number of factors, including the fact that Ms. Winters was in a different department, reported to a Vice President, and had higher performance evaluations than Ms. Brooker.[6] Mem. Sup., at 5-7, 23. Further, Ms. Brooker gains nothing from Dan Smith's testimony that Ms. Brooker's pay was at the low-end of the appropriate salary range where she provided no evidence as to how that compared to any other employee, and no evidence as to why that pay was inappropriate given Ms. Brooker's unimpressive background and performance.

    Finally, even if Ms. Brooker had made out a *prima facie* case of wage discrimination -- which she clearly does not -- she does not proffer a shred of evidence to rebut the legitimate, non-discriminatory reasons articulated by Defendants for any difference in pay between Ms. Brooker and other office/clerical workers. See Mem. Sup., at 42-44. She offers only her unsupported belief that there is "no credible explanation" for any pay differences other than race. Opp., at 5. However, Ms. Brooker's mere subjective perceptions of race discrimination cannot create a factual dispute. See Marion, 2002 WL 31761426, at *2. And clearly, Defendants did provide several credible explanations for any pay differences -- which each remain undisputed.[7] Because it is Ms. Brooker's burden to prove intentional discrimination (see Mem. Sup., at 26-27), her failure to contest Textron Lycoming's explanations for its pay decisions is fatal to her pay

---

[6] Ms. Brooker's suggestion in her opposition that she received "good/commendable" performance evaluation ratings is misleading. In fact, Ms. Brooker received an overall rating of "good" on each of her evaluations. Mem. Sup., at 6-7.

[7] Ms. Brooker's vague and conclusory allegation that differences in pay -- to the extent any were proven -- "cannot be explained by just the background of some of the other white females" (Opp., at 5) is not supported by the record and amounts to nothing more than Ms. Brooker's opinion. Similarly, it ignores the other factors articulated by Defendants that can lead to differences in pay among office/clerical workers, such as employees' prior earnings history, job performance, job difficulty, position grade level, as well as the fact that the office/clerical employees work in different departments for different supervisors who individually determine pay. Mem. Sup., at 42-44.

claim. Accordingly, Defendants are entitled to summary judgment on Ms. Brooker's pay claim for this additional reason.[8]

### C. Defendants are Entitled to Summary Judgment on Ms. Brooker's Termination Claims

In their opening memorandum, Defendants showed that, under the undisputed record evidence, Ms. Brooker cannot establish (i) a *prima facie* case of discrimination and (ii) that Defendant Textron Lycoming's stated reasons for laying off Ms. Brooker in February 2001 and July 2001 were a pretext for race discrimination. Mem. Sup., at 46-52. Ms. Brooker does not raise a genuine issue of material fact with respect to these issues. Accordingly, Defendants are entitled to summary judgment on Ms. Brooker's termination claims.

#### 1. February 2001 Termination

Ms. Brooker cannot, as a matter of law, establish a *prima facie* case of discrimination with respect to her February 2001 layoff and/or establish that her layoff was a pretext for race discrimination.

First, Ms. Brooker cannot establish a *prima facie* case because the undisputed facts show that she did not suffer an adverse employment action. Indeed, Ms. Brooker's opposition does not dispute that (i) Ms. Brooker volunteered to be laid off as part of Textron Lycoming's February 2001 reduction in force ("RIF") and (ii) prior to the February 16, 2001 effective date of her layoff as Quality Assurance Secretary, Textron Lycoming re-hired Ms. Brooker as Warranty Clerk at the same salary that she made as Quality Assurance Secretary. Mem. Sup., at 14-15, 48.

---

[8] Ms. Brooker's discussion about receiving an "inequity" raise (Opp., at 15) is a red herring. Although it is true that Textron Lycoming, in its pay monitoring, determined that Ms. Brooker's and several other employees' pay had fallen below their salary range directly after the Company raised its wage schedule to reflect market conditions, the so-called "inequity" was caused by Textron Lycoming's wage schedule adjustment and Ms. Brooker's pay was raised immediately to bring her pay within the range. See Smith Dep. at 17-18, 77-78 (attached as Ex. B to Defs' Appx.); Smith Decl., ¶ 16. Ms. Brooker has offered no evidence that her brief pay "inequity" was due to her race, and not Textron Lycoming's adjusting the wage scale upward. Interestingly, Ms. Brooker could not allege that the other employees who also received the inequity raise were black -- which they were not.

Although Ms. Brooker's opposition states that "[t]he issues surrounding the so-called voluntary layoff [of Ms. Brooker] should be decided by the trier of fact," (Opp., at 8), she does not explain what issue of fact there is. The undisputed record shows that (i) Ms. Brooker conceded that she volunteered to be laid off during a meeting that she initiated with Jay Mankad on February 1, 2001 and (ii) Mr. Mankad drafted a handwritten memo immediately following the February 1 meeting confirming that Ms. Brooker volunteered to be laid off. Mem. Sup., at 14-15, 48; Brooker Dep. 147-48 (attached as Ex. C to Defs' Appx.); 11/14/03 Declaration of Pankaj ("Jay") Mankad ("Mankad Decl.") (attached as Ex. E to Defs' Appx.), Ex. 3.[9] Ms. Brooker offers nothing in her opposition to dispute these facts.

Likewise, Ms. Brooker does not dispute that she was re-hired by the Company prior to the effective date of her February 16, 2001 layoff at the same salary she was making as Quality Assurance Secretary or that the existence of this fact precludes Ms. Brooker from establishing a *prima facie* case of discrimination. Instead, she baldly asserts (without proffering any evidence or citation to the record) that Textron Lycoming re-hired her in February 2001 because it believed Ms. Brooker was "considering legal action" against the Company. Opp., at 14. However, Ms. Brooker's claim is belied by the undisputed facts, which show that: (i) Ms. Brooker conceded at deposition that she did not have any facts to support this assertion (Brooker Dep. 186, 201-02) (attached hereto as Ex. B); (ii) Ms. Brooker did not file the instant lawsuit or her EEOC discrimination charge until after her separation from the Company in July 2001 (Mem. Sup., at 19, 58); and (iii) Ms. Brooker never filed a discrimination complaint of any kind during her employment with the Company. Mem. Sup., at 19, 58.

---

[9] In an unsuccessful attempt to minimize this damaging admission, Ms. Brooker cites deposition testimony (whereby Ms. Brooker testified that she was "not sure" if she volunteered to be laid off) that she gave immediately *after* conceding that she volunteered for layoff in February 2001. Opp., at 8-9.

Finally, Ms. Brooker cannot establish a *prima facie* case because her opposition does not dispute that, at the time of her February 2001 (and July 2001) layoff, her alleged comparators worked in different departments than her and reported to different supervisors.  See Mem. Sup., at 46-48; Burch v. WDAS AM/FM, No. CIV.A. 00-4852, 2002 WL 1471703, at *8 (E.D. Pa. June 28, 2002) (granting summary judgment on termination claims; noting that plaintiff could not establish *prima facie* case where alleged comparators reported to different decision-makers) (attached hereto as Ex. C); Taylor v. Procter & Gamble Dover Wipes, 184 F. Supp.2d 402, 414-15 (D. Del.) (granting summary judgment on discipline claim; noting that plaintiff could not establish *prima facie* case or pretext where alleged comparators were disciplined by different decision-makers), aff'd, No. 02-1701, 2002 WL 31716395 (3d Cir. Dec. 4, 2002).

Second, Ms. Brooker's opposition does not challenge Defendant Textron Lycoming's legitimate, non-discriminatory reasons for laying her off in February 2001.  Mem. Sup., at 13-15, 49-52.  Instead, and in a disingenuous attempt to establish pretext, Ms. Brooker wholly misstates the record by asserting that, during her employment, Textron Lycoming's policy was that "[l]ayoffs were to be by seniority."  Brooker Aff., ¶ 1(b).  Tellingly, Ms. Brooker does not cite to any portion of the record in support of this statement -- because no such policy ever existed.

As explained in Defendants' opening memorandum, the undisputed record evidence shows that (i) Textron Lycoming decided to reduce its workforce by approximately 10% in February 2001; (ii) in implementing the February 2001 RIF, the Vice-President or Director in charge of each department was responsible for identifying positions within his/her department that could be eliminated entirely and/or combined with other positions; (iii) in determining which employees to downsize as a result of the elimination and/or consolidation of positions, the Vice-Presidents/Directors considered an employee's work qualifications for the remaining position, in

addition to the employee's tenure at the Company; and (iv) as Director in charge of the Quality Department in February 2001, Jay Mankad determined that Ms. Brooker should be laid off because her position could be re-combined with the position of another employee (Sue Ridler) in the Quality Department and because Ms. Ridler was more qualified than Ms. Brooker to perform the re-combined position and had worked at Textron Lycoming for much longer than Ms. Brooker.  Mem. Sup., at 13, 49-50.

Ms. Brooker's opposition does not dispute these facts, nor does Ms. Brooker submit any evidence to establish that Textron Lycoming's stated reasons for selecting her for layoff in February 2001 were a pretext for race discrimination.  Instead, she baldly asserts "[n]o explanation has ever been provided" (Opp., at 4-5) as to why Jodi Michaels, Candace Stein and Yvonne Winters were not laid off.  This is insufficient to establish pretext.[10]  As explained in Defendants' opening memorandum, none of these individuals (or any of Ms. Brooker's other alleged comparators) worked in Ms. Brooker's department at the time of the February 2001 and July 2001 RIFs and, therefore, different decision-makers were responsible for determining whether to retain or downsize these employees as part of the RIFs.  Mem. Sup., at 49; Taylor, 184 F. Supp.2d at 414-15 (granting summary judgment on discipline claim; noting that plaintiff could not establish pretext where alleged comparators were disciplined by different decision-makers).

Finally, Ms. Brooker misstates case-law from this Circuit by asserting that "[t]he reduction inforce [sic] defense promulgated by Defendants herein has been effectively put to rest" by Marzano v. Computer Science Corp., 91 F.3d 497 (3d Cir. 1996).  Opp., at 9.  The

---

[10] Ms. Brooker has not previously alleged that Ms. Michaels was a comparator for purposes of her termination claims.  Mem. Sup., at 49.  In any event, the undisputed record shows that Ms. Michaels (like Ms. Brooker's other alleged comparators) did not work in the same department as Ms. Brooker at the time of the February 2001 and July 2001 RIFs.  Mem. Sup., at 22.

excerpt from Marzano contained in Ms. Brooker's opposition (Opp., at 10-13) simply stands for the proposition that a plaintiff need not be required to produce "additional evidence" in a reduction-in-force case to establish a *prima facie* case of discrimination. As discussed, supra, in this case, Ms. Brooker has provided *no* evidence of discrimination in support of her termination claims. Moreover, Marzano clearly does not eliminate the requirement that a plaintiff establish pretext to avoid summary judgment in a race discrimination case.

In sum, the various unsubstantiated and incorrect assertions made by Ms. Brooker in her opposition reflect, at most, her subjective disagreement with the manner in which Textron Lycoming reduced its workforce in February 2001. This is insufficient to establish pretext. See Reap, 2002 WL 1498679, at *11.

### 2.     July 2001 Termination

Ms. Brooker cannot, as a matter of law, establish a *prima facie* case of discrimination with respect to her July 2001 layoff and/or establish that her layoff was a pretext for race discrimination.

First, Ms. Brooker cannot establish a *prima facie* case because the undisputed facts show that she did not suffer an adverse employment action. Indeed, Ms. Brooker's opposition does not dispute that (i) by e-mail dated April 18, 2001, Ms. Brooker asked Dan Smith to return her to layoff status and (ii) beginning on April 26, 2001, Ms. Brooker was absent without approved leave from the Company for over two months. Mem. Sup., at 16-19, 48.

Second, Ms. Brooker's opposition does not challenge Textron Lycoming's stated reasons for terminating her employment in July 2001 (Mem. Sup., at 19, 51), except to allege in conclusory fashion that these reasons "should be aired in front of a trier of fact and rise to genuine issues as to material facts." Opp., at 14. Contrary to Ms. Brooker's conclusory assertion, there is no genuine issue of fact because the undisputed facts show that (i) Textron

-13-

Lycoming decided to reduce its workforce by 10% in July 2001; (ii) Ms. Brooker was absent without approved leave from April 2001 through July 2001; (iii) from April 2001 through July 2001, Ms. Brooker ignored Textron Lycoming's repeated requests that Ms. Brooker submit the proper Family and Medical Leave paperwork so that the Company could process and evaluate her leave request;[11] and (iv) Ms. Brooker never informed Textron Lycoming if and when she intended to return to work. Mem. Sup., at 17-19.

For all of the foregoing reasons, in addition to the reasons contained in Defendants' opening memorandum (Mem. Sup., at 46-52), Ms. Brooker's termination claims should be dismissed in their entirety.

### D. Defendants are Entitled to Summary Judgment on Ms. Brooker's Harassment Claims

In their opening memorandum, Defendants showed that, under the undisputed record evidence, Ms. Brooker cannot, as a matter of law, establish a *prima facie* case of racial harassment.

As a threshold matter, although Ms. Brooker alleges that Defendants "disingenuously suggest to the Court that the disparaging, belittling and despicable comments to [her] were somehow not race related," (Opp., at 16), Ms. Brooker's opposition does not identify a single race-based statement that Mr. Mankad, or anyone else at the Company, allegedly made towards her. Although Ms. Brooker's opposition cites excerpts from her deposition testimony containing conclusory statements to the effect that "Mr. Mankad 'was a demanding boss' but only towards black people," (Opp., at 15), she concedes that these statements are not based upon any record

---

[11] Given the undisputed record, it is disingenuous, at best, for Ms. Brooker to assert that Defendants "contested [Ms. Brooker's] medical leave request despite overwhelming evidence that she was very stressed. . . ." Opp., at 14. Indeed, although Ms. Brooker's opposition attaches medical records that were produced during discovery in this matter, Ms. Brooker does not dispute that, during her employment at Textron Lycoming, she never submitted the proper Family and Medical Leave paperwork, despite repeated requests from the Company that she do so. Mem. Sup., at 17-19.

evidence, but upon her subjective "*belief* that because Mankad was Indian . . . he felt blacks were inferior." Opp., at 15 (emphasis added). Ms. Brooker's subjective belief that she suffered from racial harassment, without more, is insufficient as matter of law, to establish a *prima facie* case of harassment. Mem. Sup., at 52-55; Martin v. Enterprise Rent-A-Car, No. CIV.A. 00-CV-6029, 2003 WL 187432, at *8 (E.D. Pa. Jan. 15, 2003) (attached hereto as Ex. D) (granting summary judgment on race harassment claim where none of alleged comments "refers to [plaintiff's] race. . . .").

Moreover, even if Ms. Brooker could establish that any of the alleged comments or conduct attributed to Mr. Mankad (or anyone else) were racially motivated, her opposition makes no attempt to explain how she can establish the other *prima facie* elements of a racial harassment claim. Mem. Sup., at 55-56. For example, Ms. Brooker's opposition does not dispute, *inter alia*, that Ms. Brooker cannot, as a matter of law, establish *respondeat superior* liability given that (i) Textron Lycoming maintained an EEO policy prohibiting discrimination and providing a complaint procedure for employees who believed they were being discriminated against; and (ii) Ms. Brooker never complained to Human Resources, or anyone else at the Company, that she believed she was being discriminated against due to her race. Mem. Sup., at 56.[12]

---

[12] Realizing that there is no record evidence to support her harassment claim (or any of her other discrimination claims), Ms. Brooker relies upon unsubstantiated allegations that are wholly irrelevant to the instant lawsuit. For example, Ms. Brooker references an EEOC charge (see Brooker Aff., ¶ 3) that (i) was filed by another employee almost six months *after* Ms. Brooker's separation from Textron Lycoming in July 2001; and (ii) contains allegations that post-date Ms. Brooker's separation from the Company and which, more importantly, have nothing to do with Ms. Brooker. Likewise, Ms. Brooker incorrectly alleges, without any citation to the record, that at the present time -- and almost two and a half years *after* her separation from Textron Lycoming -- there are "no blacks working in non-exempt positions out of approximately 200 employees" at Textron Lycoming. Brooker Aff., at ¶ 4. In fact, at the present time, there are only 23 non-exempt, non-union positions at Textron Lycoming (Ms. Brooker was a non-union employee), and over 10% of these positions are filled by African-American employees. In any event, Ms. Brooker cannot rely upon either of these irrelevant and unsubstantiated allegations to avoid summary judgment on her discrimination claims. See Hargrave v. County of Atlantic, 262 F. Supp.2d 393, 420 (D.N.J. 2003) (noting plaintiff's citation to deposition testimony of African-American co-worker about alleged discrimination towards the co-worker was irrelevant to plaintiff's discrimination claims and could not be used to defeat summary judgment).

For all of the foregoing reasons, in addition to the reasons contained in Defendants' opening memorandum (Mem. Sup., at 52-56), Ms. Brooker's harassment claims should be dismissed in their entirety.

### E. Defendants are Entitled to Summary Judgment on Ms. Brooker's Retaliation Claims

Ms. Brooker concedes that her retaliation claim is meritless, as her opposition makes no reference to this claim. See Marion, 2002 WL 31761426, at *4. For this reason, in addition to the reasons listed in Defendants' opening memorandum (Mem. Sup., at 56-58), this claim should be dismissed.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF JERMAL D. BROOKER'S LOSS OF CONSORTIUM CLAIM

In their opening memorandum, Defendants established that Plaintiff Jermal Brooker's loss of consortium claim should be dismissed because (i) as a matter of law, loss of consortium damages are not recoverable in employment discrimination actions and (ii) the undisputed facts show that Mr. Brooker cannot state a loss of consortium claim.

Mr. Brooker's opposition does not dispute that, as a matter of law, loss of consortium damages are not recoverable in employment discrimination actions. Mem. Sup., at 59. For this reason alone, Mr. Brooker's loss of consortium claim should be dismissed.

Moreover, although Mr. Brooker's opposition mischaracterizes the holding of Damiano v. Andre, 29 Pa. D. & C.3d 531 (Pa. Com. Pl. 1981), Mr. Brooker does not dispute that (i) Ms. Brooker does not reside with him; (ii) he and Ms. Brooker have been separated since November 2002; (iii) Ms. Brooker initiated divorce proceedings against him some time prior to November 2002; (iv) Ms. Brooker obtained a court order against him precluding Mr. Brooker from entering the marital home; and (v) he was arrested in November 2002 for violating the court order. Mem.

Sup., at 59. Given these undisputed facts, Mr. Brooker clearly cannot state a claim for loss of consortium.

For all of the foregoing reasons, in addition to the reasons listed in Defendants' opening memorandum (Mem. Sup., at 59-60), Mr. Brooker's loss of consortium claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, in addition to the reasons provided in their opening memorandum, Defendants Textron Inc., Textron Lycoming and Avco Corporation are entitled to summary judgment on all of Plaintiffs' claims.

Dated: January 12, 2004

          Respectfully submitted,

_____

Alison B. Marshall, Esq.
Sarah B. McClure, Esq.
Nicholas J. Sanservino, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington D.C.  20001-2113
(202) 879-3939 (telephone)
(202) 626-1700 (telecopy)

John E. Iole, Esq.  (Pa. I.D. #47768)
JONES DAY
One Mellon Bank Center, 31st Floor
500 Grant Street
Pittsburgh, PA  15219-2502
(412) 391-3939 (telephone)
(412) 394-7959 (telecopy)
*Associate Counsel of Record Pursuant to Local Rule 83.5.2*

Attorneys for Defendants Textron Inc., Textron Lycoming and Avco Corporation

## CERTIFICATE OF SERVICE

I hereby certify that, on this 12th day of January, 2004, a true and accurate copy of the **Reply Memorandum of Points and Authorities in Further Support of Defendants' Motion for Summary Judgment** was served via first-class mail upon:

> Harry J. Sher, Esq.
> 1608 Walnut Street, 19th Floor
> Philadelphia, PA 19103
> Attorney for Plaintiffs

 

_____
Nicholas J. Sanservino, Jr.